IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

STEVEN W. MILLER,

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

No. C13-2028

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*   *PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.*  *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*IV.*  *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     *A.*   *Miller's Education and Employment Background* . . . . . . . . . . . . 5
     *B.*   *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . 5
          *1.*    *Miller's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . 5
          *2.*    *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . 6
     *C.*   *Miller's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*V.*   *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     *A.*   *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . 12
     *B.*   *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . 14
          *1.*    *Substance Abuse* . . . . . . . . . . . . . . . . . . . . . . . . 15
          *2.*    *Dr. Crowley's Opinions* . . . . . . . . . . . . . . . . . . . . 20
          *3.*    *Hypothetical Question* . . . . . . . . . . . . . . . . . . . . . 23
     *C.*   *Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*VI.*  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*VII.* *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Steven W. Miller on April 16, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title XVI supplemental security income ("SSI") benefits. Miller asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide SSI benefits. In the alternative, Miller requests the Court to remand this matter for further proceedings.

## II. PRIOR PROCEEDINGS

On December 3, 2010, Miller protectively filed an application for SSI benefits.[1] In his application, Miller alleged an inability to work since April 1, 2009 due to diabetes, anxiety, depression, and arm, neck, and back pain.[2] Miller's application was denied on May 16, 2011. On August 16, 2011, his application was denied on reconsideration. On September 2, 2011, Miller requested an administrative hearing before an Administrative Law Judge ("ALJ"). On November 29, 2012, Miller appeared via video conference with

---

[1] Miller also applied for Title II disability insurance benefits on November 23, 2009 and December 7, 2010. Both applications were denied because Miller did not meet the necessary "insured status" requirements. *See* Administrative Record at 191. Miller also previously applied for SSI benefits on November 23, 2009. His application was denied. Apparently he did not appeal that decision. Additionally, in his decision on the December 2010 application currently before the Court, the ALJ found no basis for reopening the November 2009 application. *See* Administrative Record at 11. Accordingly, the only application under review before the Court is Miller's December 8, 2010 application for SSI benefits.

[2] In his decision, the ALJ noted that "[a]n application for supplemental security income must be filed in order for a claimant to be eligible for benefits. Therefore, the first date relevant for consideration for the Title XVI application is the [protective] filing date of December 3, 2010." Administrative Record at 11. Miller does not challenge the ALJ's conclusion that his disability onset date for purposes of SSI benefits is December 3, 2010. *See* Miller's Brief (docket number 10) at 2, n.1.

his attorney before ALJ John E. Sandbothe for an administrative hearing. Miller and vocational expert Melinda Stahr testified at the hearing. In a decision dated December 7, 2012, the ALJ denied Miller's claim. The ALJ determined that Miller was not disabled and not entitled to SSI benefits because if he stopped his substance use, he would be capable of performing work that exists in significant numbers in the national economy. Miller appealed the ALJ's decision. On February 13, 2013, the Appeals Council denied Miller's request for review. Consequently, the ALJ's December 7, 2012 decision was adopted as the Commissioner's final decision.

On April 16, 2013, Miller filed this action for judicial review. The Commissioner filed an Answer on August 12, 2013. On September 13, 2013, Miller filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing work that exists in significant numbers in the national economy. On December 12, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On July 17, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir.

2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be

upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Miller's Education and Employment Background

Miller was born in 1969. He is a high school graduate. At the administrative hearing, Miller testified that he attended technical school after high school.

The record contains a detailed earnings report for Miller. From 1987 to 2000, Miller earned between $521.04 (1988) and $19,783.14 (1998). He had no earnings in 2001. From 2002 to 2004, Miller earned $6,017.65, $9,034.36, and $4,284.44, respectively. He, again, had no earnings from 2005 to 2008. In 2009 and 2010, he earned $11,160.00 and $10,269.00. Miller has no earnings since 2011.

### B. Administrative Hearing Testimony

#### 1. Miller's Testimony

At the administrative hearing, Miller's attorney asked Miller why he stopped working. Miller responded that he stopped working due to severe pain in his shoulder and back. Miller attributed his shoulder and back pain to heavy lifting involved with working for many years as an auto mechanic.

Next, Miller's attorney inquired about Miller's history of substance abuse. Miller testified that he had regularly used crack cocaine and methamphetamine in the past. He reported that his last use was during a relapse in March 2012, for which he sought treatment. Miller also stated that he regularly attends NA meeting about four times per week.

Miller's attorney also asked Miller to discuss his mental health difficulties. According to Miller, he suffers from depression, anxiety, and ADHD. Miller testified that his symptoms included, short-term memory problems, difficulty sleeping, mood problems, difficulty concentrating, and panic attacks.

### 2.   *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Melinda Stahr with a hypothetical for an individual who:

> can lift 20 pounds occasionally, 10 pounds frequently. He can only occasionally balance, stoop, crouch, kneel, crawl, or climb; no overhead reaching; no extremes of heat or cold; simple, routine, repetitive work; no contact with the public; regular pace.

(Administrative Record at 56-57.)   The vocational expert testified that under such limitations, Miller could not perform his past relevant work, but could perform the following jobs:   (1) housekeeper (1,600 positions in Iowa and 133,000 positions in the nation), (2) small products assembler (1,200 positions in Iowa and 21,000 positions in the nation), and (3) folder (1,800 positions in Iowa and 143,000 positions in the nation).   The ALJ asked a second hypothetical that was identical to the first hypothetical, except that the individual would "require two or more absences per month and a slow pace for up to one-third of the day[.]"   The vocational expert responded that such limitations would preclude competitive employment.

### C. Miller's Medical History

On February 12, 2010, Miller was referred by Disability Determination Services ("DDS") to Dr. Kyle P. Christianson, M.D., for a physical examination. Miller's chief complaints were left shoulder pain and low back pain. Miller also reported disturbed sleep due to his pain. Upon examination, Dr. Christianson noted that:

> [Miller] states that he has no problems with lifting as a rule with his right arm or hand. He has limit to his left side to about 5 pounds. He states even a gallon of milk will cause more pain in his left shoulder. He is limited by his low back with prolonged standing but unable to give a good duration. He is more comfortable sitting with regards to his back. He is even more comfortable if he is able to lean back against something. He estimates ability to walk about a mile. Cold weather aggravates his left shoulder pain.

(Administrative Record at 402.) Dr. Christianson diagnosed Miller with shoulder joint pain, chronic lower back pain, and diabetes. X-rays of Miller's left shoulder and back were also taken as part of the evaluation. The results of the x-rays showed normal radiographic appearance of the left shoulder and stable radiographic findings of the lumbrosacral spine.

On March 16, 2010, Dr. John May, M.D., reviewed Miller's medical records and provided DDS with a physical residual functional capacity ("RFC") assessment for Miller. Dr. May determined that Miller could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. May also determined that Miller could frequently climb, balance, stoop, kneel, crouch, and crawl. Dr. May further opined that Miller should limit overhead reaching due to a past right shoulder tear and current left shoulder pain. Dr. May found no visual, communicative, or environmental limitations.

On January 11, 2011, Miller was evaluated by Dr. Matthew A. Howard, III, M.D., for neck pain and left arm pain. Miller described his pain as a "constant shooting pain and it is about 2-10/10 in intensity."[3] According to Miller, walking and sitting make the pain worse. Lying down and resting help improve the pain. Dr. Howard noted that:

> [Miller] said for the past 2 years, the pain has been progressively getting worse, associated with tingling, numbness, weakness. And he drops things frequently. He also has difficulty buttoning his shirt, difficulty typing and writing because of the position. He has tried some pain medication, but he said the pain medication his doctor gave him makes him sick. So after that he never tried any pain medication. He has no other treatments.

(Administrative Record at 444.) Upon examination and review of an MRI, Dr. Howard diagnosed neck and left arm pain, with severe neuroforaminal stenosis at the C5-C6 level.

On January 18, 2011, Miller presented at the Allen Memorial Hospital in Waterloo, Iowa, with "homicidal thoughts towards 'people in my past.'"[4] He was admitted to Mercy Medical Center in Mason City, Iowa, due to a lack of beds in the Waterloo area. Dr. Dale A. Armstrong, M.D., noted that Miller "had some enormous psychosocial stressors. He had lost his job in April and had been homeless for the 2 months prior to admission. He had lost his driver'[s] license because he had been driving while barred, and he was feeling quite hopeless and overwhelmed."[5] Miller improved during his hospitalization and was discharged on January 20. At the time of discharge, Dr. Armstrong diagnosed Miller with

---

[3] Administrative Record at 444.

[4] Administrative Record at 488.

[5] *Id.*

8

major depressive disorder and remote history of methamphetamine and cocaine abuse.[6]
Dr. Armstrong prescribed medication as treatment.

On February 1, 2011, Miller met with Dr. William Crowley, M.D., for a psychiatric evaluation. Miller's chief complaints were problems with being in public, anxiety, and difficulties with concentration. In reviewing Miller's mental health history, Dr. Crowley noted that Miller has a history of substance abuse, including:

> four detoxes and rehabs in the period 2001-2002 for meth[amphetamine] and crack. These have been at Pathways, Prairie Ridge. He drank to get drunk weekly up to 10 years ago, never used marijuana and quit methamphetamine and cocaine after treatment in 2001.

(Administrative Record at 464.) Upon examination, Dr. Crowley diagnosed Miller with mood disorder, social phobia, generalized anxiety, history of polysubstance dependence, personality disorder, and diabetes. Dr. Crowley also noted the following psychosocial stressors for Miller: recent homelessness, limited support system, unemployment, and poor finances. Dr. Crowley recommended medication as treatment.

On April 1, 2011, Dr. Jan Hunter, D.O., reviewed Miller's medical records and provided DDS with a physical RFC assessment for Miller. Dr. Hunter determined that Miller could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-

---

[6] It should be noted that when he was admitted to the hospital, a drug screen found evidence of cocaine in Miller's system. Miller denied any drug use and suggested that his positive drug test was the result of spending a great deal of time with his father who regularly smoked crack cocaine. Doctors noted that Miller had extensive treatment for drug abuse in 2001 and 2002, but apparently did not believe he was currently abusing drugs, regardless of the positive drug test, as they only diagnosed him with past drug dependence and made no recommendations for drug abuse treatment at that time. *See* Administrative Record at 488-489.

hour workday, and (5) push and/or pull without limitations. Dr. Hunter also determined that Miller could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, but never crawl or climb ladders, ropes, or scaffolds. Dr. Hunter further opined that Miller should be limited to occasional reaching and handling with his left upper extremity. Dr. Hunter found no visual, communicative, or environmental limitations.

On May 16, 2011, Dr. Beverly Westra, Ph.D., reviewed Miller's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Miller. On the Psychiatric Review Technique assessment, Dr. Westra diagnosed Miller with mood disorder, major depressive disorder, generalized anxiety disorder, social phobia, personality disorder, and polysubstance abuse. Dr. Westra determined that Miller had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Westra determined that Miller was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Westra concluded that:

> [Miller] has impairments that are severe. He is capable of a range of simple, routine and repetitive tasks that do not require sustained vigilance or close, frequent interaction with others. He can interact appropriately on a superficial basis. He'll require extra support in adapting to change. Drug screen and

> self reports are inconsistent and this erodes credibility to some
> degree.

(Administrative Record at 543.)

On March 7, 2012, Miller was admitted to Pathways Behavioral Services, Inc., for use of alcohol, cocaine, and methamphetamine. He was discharged on May 24, 2012 because "he has not been in contact with this agency in over thirty days."[7] The discharge summary noted that:

> [Miller] gained coping skills to deal with addiction during his
> time in treatment. He completed residential treatment
> successfully. However, on an outpatient basis he struggled
> with attendance and maintaining contact. [He] did report that
> he was regularly involved in twelve step meetings and that this
> was a good support for him.

(Administrative Record at 656.) The agency recommended that Miller continue to pursue sobriety and continue involvement with twelve step programs.

On October 29, 2012, Dr. Crowley filled out "Mental Impairment Interrogatories" provided to him by Miller's attorney. Dr. Crowley diagnosed Miller with mood disorder, social phobia, and generalized anxiety disorder. Dr. Crowley outlined the following signs and symptoms for Miller's mental impairments: poor memory, sleep disturbance, mood disturbance, emotional liability, recurrent panic attacks, paranoia, feelings of worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, generalized persistent anxiety, and hostility. Dr. Crowley opined that Miller's prognosis was "poor." Dr. Crowley determined that Miller had marked difficulties with the following functional abilities: understanding and remembering detailed instructions, carrying out detailed instructions, performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, sustaining an ordinary routine without special supervision, working in coordination with or proximity to others

---

[7] Administrative Record at 656.

without being distracted by them, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, and setting realistic goals or making plans independently of others. Dr. Crowley concluded that Miller had the following limitations: slight restriction of activities of daily living, moderate difficulties in maintaining social functioning, and often would have difficulties in maintaining concentration, persistence, or pace.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Miller is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Miller had not engaged in substantial gainful activity since December 3, 2010. At the second step, the

ALJ concluded from the medical evidence that Miller had the following severe impairments: substance abuse, cervical degenerative disc disease, anxiety/depression, degenerative joint disease of the right shoulder, personality disorder, and diabetes. At the third step, the ALJ found that Miller's impairments, including his substance use disorder, meet sections 12.06 and 12.09 of 20 C.F.R. Pt. 404, Subpt. P, App. 1. However, also at step three, the ALJ determined that if Miller stopped his substance use, he would not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined that if Miller stopped his substance use, his RFC would be as follows:

> [Miller] would have the residual functional capacity to perform light work . . . such that he could lift and carry twenty pounds occasionally, ten pounds frequently; he could only occasionally balance, stoop, kneel, crouch, crawl, and climb; and there could be no overhead reaching and no extremes of heat or cold. In addition, he is limited to simple, routine, repetitive work; there could be no contact with the public; and he could work at no more than a regular pace.

(Administrative Record at 15.) Also at the fourth step, the ALJ determined that Miller was unable to perform any of his past relevant work. At the fifth step, the ALJ determined that if Miller stopped his substance use, then, based on his age, education, previous work experience, and RFC, he could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Miller was not disabled.

### B.  Objections Raised By Claimant

Miller argues that the ALJ erred in three respects. First, Miller argues that the ALJ's finding that his substance use was a contributing factor material to the determination of disability was not based on substantial evidence. Second, Miller argues that the ALJ failed to properly evaluate the opinions of his treating psychiatrist, Dr. Crowley. Lastly, Miller argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

14

## 1. Substance Abuse

Miller argues that the ALJ's conclusion that his substance abuse was a material factor contributing to his disability is not supported by substantial evidence. Specifically, Miller contends that the ALJ's discussion of his substance use is "incomplete" and "misleading." Miller points out that the ALJ noted he had been in substance abuse treatment four times prior to 2012, but failed to recognize that those treatments occurred in 2001 and 2002. Miller further points out that "[t]he ALJ noted the positive drug screen in 2011, but ignored the fact that there was no diagnosis of substance dependence in 2011 and no recommendation for treatment. The only recent use is from March 2012. The ALJ cannot point to any other evidence of current or recent use."[8] Miller concludes that "[o]ther than a relapse in March 2012, there is no substantial evidence of use or abuse during the relevant time period. . . . Substantial evidence does not support the ALJ's finding that drug addiction or alcoholism was material. The ALJ failed to adequately develop the record and explain how he concluded drug addiction was material."[9]

In 1996, Congress amended the Social Security Act to eliminate benefits for disabilities arising from addiction to alcohol or other drugs. *See* Pub. L. No. 104-121, 110 Stat. 847; *see also Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003) (discussing the 1996 Congressional amendment); *Jackson v. Apfel*, 162 F.3d 533, 537 (8th Cir. 1998) (same). The regulations implemented this law at 20 C.F.R. § 404.1535 (relating to applications for disability insurance benefits) and 20 C.F.R. § 416.935 (relating to applications for SSI benefits). The two sections are identical and provide as follows:

---

[8] Miller's Brief (docket number 10) at 17.

[9] Miller's Brief (docket number 10) at 20-21.

How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

> (I) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535, 416.935.

According to the regulations, the ALJ must first determine whether the claimant is disabled. *See* 20 C.F.R. § 416.935 ("*If we find that you are disabled* and have medical

evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." (emphasis added)). "The ALJ must reach this determination initially . . . using the five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders." *Brueggemann*, 348 F.3d at 694 (citation omitted).

If the ALJ determines that all of a claimant's limitations, including the effects of substance use disorders, show that the claimant is disabled, then the ALJ "must next consider which limitations would remain when the effects of the substance use disorders are absent." *Id.* at 694-95 (citing *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000); 20 C.F.R. § 404.1535(b)(2)). "The focus of the inquiry is on the impairments remaining if the substance abuse ceased, and whether those impairments are disabling, regardless of their cause." *Pettit*, 218 F.3d at 903 (citations omitted). The claimant carries the burden of proving that alcoholism or drug addiction is not a material factor to the finding of disability. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (citing *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)). "If the ALJ is unable to determine whether substance abuse disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow. . . . In colloquial terms, on the issue of materiality of alcoholism, a tie goes to [the claimant]." *Brueggemann*, 348 F.3d at 693 (citation omitted). Accordingly, the ALJ is required to develop a full and fair record and support his or her conclusions with substantial evidence. *Id.* at 695. In summary, "[o]nly after the ALJ has made an initial determination 1) that [the claimant] is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism or drug addiction, may [the ALJ] then reach a conclusion on

whether [the claimant's] substance use disorders are a contributing factor material to the determination of disability." *Id.*

Here, the ALJ followed the analytical framework set forth in the regulations. The ALJ first applied the five-step sequential evaluation process for determining whether an individual is disabled, and determined that Miller was disabled based on his impairments, including his substance use disorder (methamphetamine and cocaine abuse). Next, the ALJ determined that if Miller stopped the substance use, he would continue to have a severe impairment or combination of impairments. The ALJ concluded, however, that absent the substance use, his remaining limitations were not disabling. The ALJ did not explicitly explain the reasons for his conclusion, however, he implicitly explained his reasoning in his review of Miller's medical history:

> Clinical notes from February 2011 indicated [Miller] had had four detoxes and rehabs for meth and crack. He drank to get drunk weekly up to ten years earlier. . . .
>
> In May 2012, clinical notes indicated [Miller] had had a recent hospital stay for drug abuse. Methamphetamine and cocaine was found to be in his urine. . . . He was involved in various services to include Pathways, N.A., and A.A. June 2012 notes from Pathways indicated [Miller] had completed residential treatment successfully and had gained coping skills to deal with his addiction. However, he had not been in contact for over thirty days and was discharged. . . .

(Administrative Record at 16-17.) The ALJ offers no further discussion or reasons for his determination that Miller's substance use was a contributing factor material to the determination of disability.

As Miller points out in his brief, the "four detoxes and rehabs for meth and crack" and alcohol consumption found in the February 2011 clinical notes referred to substance

abuse treatment he underwent in 2001 and 2002.[10] Similarly, Miller self-referred himself to treatment for methamphetamine use and cocaine use in March 2012. After successfully completing treatment and attending twelve-step meetings, Miller was discharged from treatment in May 2012.[11] Additionally, though not addressed by the ALJ, in January 2011, a drug screen found cocaine in Miller's system, but the treating doctors did not diagnose Miller with substance abuse; instead, doctors determined him to have a "remote history of methamphetamine and cocaine use."[12] The treating doctors also did not recommend any type of treatment for drug use or abuse. There is no other evidence in the record of Miller abusing drugs or alcohol during the relevant two-year time period. While there is evidence in the record that Miller used drugs during the relevant time period, December 2010 through December 2012, that evidence suggests any drug abuse was confined to a short period of time in and around March 2012, for which he sought treatment that he successfully completed. Even though there is minimal evidence of drug use in the record, the ALJ's lack of explanation or reasoning in his decision, leaves the Court unconvinced that substantial evidence supports a finding that Miller's substance use was a contributing factor material to the determination of his disability.

Therefore, because the Court is unwilling to conclude that the ALJ's determination with regard to whether Miller's substance abuse was a material factor contributing to his disability is supported by substantial evidence, the Court determines that remand is necessary. *See Brueggemann*, 348 F.3d at 695 (an ALJ is required to develop a full and fair record and support his or her conclusions with substantial evidence). On remand, the ALJ must fully and fairly develop the record with regard to the relationship between

---

[10] *See* Administrative Record at 464.

[11] *Id*. at 656-57.

[12] *Id*. at 488.

19

Miller's substance abuse and his physical and mental impairments when determining whether Miller's substance abuse is a material factor contributing to his disability.

### 2. *Dr. Crowley's Opinions*

Miller argues that the ALJ failed to properly evaluate the opinions of his treating psychiatrist, Dr. Crowley. Specifically, Miller argues that the ALJ's reasons for discounting Dr. Crowley's opinions are not supported by substantial evidence in the record. Miller concludes that this matter should be remanded for further consideration of Dr. Crowley's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*.); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by

superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ addressed the opinions of Dr. Crowley as follows:

> In October 2010,[13] William Crowley, M.D., [Miller's] treating psychiatrist, completed a questionnaire on [Miller's] behalf. Dr. Crowley stated that [Miller] had been treated at the mental health clinic since 2002 and his highest GAF was 50. Dr. Crowley checked off boxes indicating [Miller] had a variety of signs and symptoms. Moreover, Dr. Crowley felt that [Miller's] prognosis was poor. Dr. Crowley also checked off boxes as to [Miller's] abilities. And last, Dr. Crowley

---

[13] 2010 is a typographical error, the date should read 2012.

circled his opinion as to [Miller's] degree of limitation. . . .
While Dr. Crowley had opportunities on the form that he
completed to provide additional information that would help to
explain his opinions as to [Miller's] impairments and resulting
limitations, he failed to do so.     As courts have long
recognized, form reports in which the source's only obligation
is to fill in a blank or check off a box are entitled to little
weight in the adjudicative process. . . . As such, little weight
is assigned to Dr. Crowley's opinions set forth on the
questionnaire.

(Administrative Record at 19.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to
develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative
hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly
in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*,
143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a
treating physician, the regulations require that the ALJ give "good reasons" for rejecting
those opinions. *See* 20 C.F.R. § 404.1527(d)(2).

The Court finds that the ALJ has not fully met these requirements. Even though
Dr. Crowley was Miller's treating psychiatrist from February 2011 through October 2012,
and met with Miller on multiple occasions, the ALJ made no reference to any of
Dr. Crowley's treatment notes.[14] Because the ALJ failed to address these treatment notes,
the Court has no ability to review whether these treatment notes are consistent or
inconsistent with the opinions expressed by Dr. Crowley on the questionnaire. Moreover,
in *Reed v. Barnhart*, 399 F.3d 917 (8th Cir. 2005), the Eighth Circuit Court of Appeals
stated that it has "never upheld a decision to discount an MSS [(medical source statement)]
on the basis that the 'evaluation by box category' is deficient *ipso facto*." *Id*. at 921.
Because the ALJ offered no reason, other than Dr. Crowley filled out a check-box

---

[14] *See* Administrative Record at 464-465; 609-621.

questionnaire to discount Dr. Crowley's opinions, the Court concludes the ALJ has failed to give "good reasons" for rejecting the opinions of Dr. Crowley. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). The Court further finds that the ALJ failed in his duty to fully and fairly develop the record with regard to Dr. Crowley's opinions. Accordingly, the Court determines that this matter should be remanded for further consideration of Dr. Crowley's opinions. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Crowley's opinions and support his reasons with evidence from the record.

### 3. *Hypothetical Question*

Miller argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of his impairments. Specifically, Miller argues that the ALJ's hypothetical was incomplete and did not contemplate all of his functional limitations, including his ability to reach and handle. Miller maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Miller argues that the ALJ gave the opinions of Dr. Hunter, a non-examining state agency doctor, great weight, but failed to include Dr. Hunter's limitations on Miller's ability to reach in his RFC assessment for Miller. In the RFC assessment, the ALJ simply provided that Miller is limited in his ability to reach overhead. Dr. Hunter, whose opinions the ALJ gave great weight, limited Miller to occasional reaching in all directions and occasional handling. The Court determines that remand is appropriate. Accordingly, on remand, the ALJ should reconsider the hypothetical question posed to the vocational expert to make sure that it captures the concrete consequences of Miller's limitations based on the medical evidence as a whole, including the opinions of Dr. Hunter. *See Hunt*, 250 F.3d at 625 (Eighth Circuit law requires the ALJ to "capture the concrete consequences of the claimant's deficiencies.").

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that

the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) fully and fairly develop the record with regard to whether Miller's substance abuse is a material factor contributing to his disability; (2) provide good reasons for rejecting the opinions of Dr. Crowley; and (3) provide the vocational expert with a hypothetical question that captured the concrete consequences of Miller's limitations based on the medical evidence as a whole. Accordingly, the Court finds that remand is appropriate.

## *VI. CONCLUSION*

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must fully and fairly develop the record with regard to whether Miller's alcohol abuse is a material factor contributing to his disability. The ALJ must also provide clear reasons for accepting or rejecting Dr. Crowley's opinions, and support his reasons with evidence from the record. Lastly, the ALJ shall provide the vocational expert with a hypothetical question that captures the concrete consequences of Miller's limitations based on the medical evidence as a whole.

## *VII. ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this ___5th___ day of May, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA